UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES ERIC GRIFFIN,

           Plaintiff,

v.                                   Case No. 8:23-cv -880-AEP

MARTIN O'MALLEY,
Commissioner of Social Security,[1]

           Defendant.
_____/

## ORDER

Plaintiff seeks judicial review of the denial of his claim for a period of disability and disability insurance benefits ("DIB"). As the Administrative Law Judge's ("ALJ") decision was based on substantial evidence and employed proper legal standards, the Commissioner's decision is affirmed.

**I.**

### A.  Procedural Background

Plaintiff filed an application for a period of disability, and DIB (Tr. 200–01, 240). The Social Security Administration ("SSA") denied Plaintiff's claims both initially and upon reconsideration (Tr. 84, 86, 96, 103). Plaintiff then requested an administrative hearing (Tr. 112). Per Plaintiff's request, the ALJ held a hearing at

---

[1] Martin O'Malley is now the Commissioner of Social Security. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Commissioner Martin O'Malley should be substituted for Acting Commissioner Kilolo Kijakazi as the defendant in this matter. No further action needs to be taken to continue this matter by reason of the last sentence of section 205(g) of the Social Security Act.  42 U.S.C. § 405(g).

which Plaintiff appeared and testified (Tr. 47–69). Following the hearing, the ALJ

issued an unfavorable decision finding Plaintiff not disabled and accordingly denied

Plaintiff's claims for benefits (Tr. 30–45). Subsequently, Plaintiff requested review

from the Appeals Council, which the Appeals Council denied (Tr. 1–8, 188–90).

Plaintiff then timely filed a complaint with this Court (Doc. 1). The case is now ripe

for review under 42 U.S.C. §§ 405(g), 1383(c)(3).

### B.    Factual Background and the ALJ's Decision

Plaintiff, who was born in 1961, claimed disability beginning January 13,

2020 (Tr. 240). Plaintiff obtained a high school education (Tr. 231). Plaintiff's past

relevant work experience included work as general manager, salesperson,

sales/quality inspector, and a security officer (Tr. 231). Plaintiff alleged disability

due to ventricular tachycardia in heart, high blood pressure, anxiety, and V tach

(Tr. 230).

In rendering the administrative decision, the ALJ concluded that Plaintiff

met the insured status requirements through December 31, 2024, and had not

engaged in substantial gainful activity since January 13, 2020, the alleged onset date

(Tr. 32). After conducting a hearing and reviewing the evidence of record, the ALJ

determined Plaintiff had the following severe impairments: "ventricular tachycardia

status post defibrillator implant; coronary artery disease status-post stenting;

hypothyroidism; hypertension; sleep apnea; and, obesity" (Tr. 32).

Notwithstanding the noted impairments, the ALJ determined Plaintiff did not have

an impairment or combination of impairments that met or medically equaled one

of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 34). The ALJ then concluded that Plaintiff retained a residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs, but must never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. He must also avoid concentrated exposure to atmospheric contaminants such as fumes, odors, dust, gases, and poor ventilation.

(Tr. 34). In formulating Plaintiff's RFC, the ALJ considered Plaintiff's subjective complaints and determined that, although the evidence established the presence of underlying impairments that reasonably could be expected to produce the symptoms alleged, Plaintiff's statements as to the intensity, persistence, and limiting effects of his symptoms were not entirely consistent with the medical evidence and other evidence (Tr. 35).

Considering Plaintiff's noted impairments, however, the ALJ determined Plaintiff could not perform his past relevant work as an exterminator/inspector but could perform his past relevant work as a general manager or an automobile salesperson, both as actually performed and generally performed in the national economy (Tr. 40). Accordingly, based on Plaintiff's age, education, work experience, and RFC, the ALJ found Plaintiff not disabled (Tr. 40–41).

## II.

To be entitled to benefits, a claimant must be disabled, meaning he or she must be unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to

3

result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is an impairment that results from anatomical, physiological, or psychological abnormalities, which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

To regularize the adjudicative process, the SSA promulgated the detailed regulations currently in effect. These regulations establish a "sequential evaluation process" to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1520, 416.920. If an individual is found disabled at any point in the sequential review, further inquiry is unnecessary. 20 C.F.R. §§ 404.1520(a), 416.920(a). Under this process, the ALJ must determine, in sequence, the following: whether the claimant is currently engaged in substantial gainful activity; whether the claimant has a severe impairment, *i.e.*, one that significantly limits the ability to perform work-related functions; whether the severe impairment meets or equals the medical criteria of 20 C.F.R. Part 404 Subpart P, Appendix 1; and whether the claimant can perform his or her past relevant work. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the claimant cannot perform the tasks required of his or her prior work, step five of the evaluation requires the ALJ to decide if the claimant can do other work in the national economy in view of his or her age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). A claimant is entitled to benefits only if unable

to perform other work. *Bowen v. Yuckert*, 482 U.S. 137, 140-42 (1987); 20 C.F.R. §§ 404.1520(g)(1), 416.920(g)(1).

The ALJ, in part, decides Plaintiff's claim pursuant to regulations designed to incorporate vocational factors into the consideration of disability claims. *See* 20 C.F.R. §§ 404.1501, *et seq.* These regulations apply in cases where an individual's medical condition is severe enough to prevent him from returning to his former employment but may not be severe enough to prevent him from engaging in other substantial gainful activity. In such cases, the Regulations direct that an individual's residual functional capacity, age, education, and work experience be considered in determining whether the claimant is disabled. These factors are codified in tables of rules that are appended to the regulations and are commonly referred to as "the grids." 20 C.F.R. Part 404, Subpart P, App. 2. If an individual's situation coincides with the criteria listed in a rule, that rule directs a conclusion as to whether the individual is disabled. 20 C.F.R. §§ 404.1569, 416.969. If an individual's situation varies from the criteria listed in a rule, the rule is not conclusive as to an individual's disability but is advisory only. 20 C.F.R. §§ 404.1569a, 416.969a.

A determination by the Commissioner that a claimant is not disabled must be upheld if it is supported by substantial evidence and comports with applicable legal standards. *See* 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (citation and internal quotation marks omitted). While the

court reviews the Commissioner's decision with deference to the factual findings, no such deference is given to the legal conclusions. *Ingram v. Comm'r of Soc. Sec.*, 496 F.3d 1253, 1260 (11th Cir. 2007) (citations omitted).

In reviewing the Commissioner's decision, the court may not reweigh the evidence or substitute its own judgment for that of the ALJ, even if it finds that the evidence preponderates against the ALJ's decision. *Winschel*, 631 F.3d at 1178 (citations omitted); *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). The Commissioner's failure to apply the correct law, or to give the reviewing court sufficient reasoning for determining that he or she has conducted the proper legal analysis, mandates reversal. *Ingram*, 496 F.3d at 1260 (citation omitted). The scope of review is thus limited to determining whether the findings of the Commissioner are supported by substantial evidence and whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002) (per curiam) (citations omitted).

### III.

Plaintiff argues that new evidence submitted to this Court will change the administrative result and that the ALJ erred by improperly characterizing evidence in the RFC analysis. For the following reasons, the ALJ applied the correct legal standards, and the ALJ's decision is supported by substantial evidence.

### A.    New Evidence

Plaintiff argues that there is a reasonable probability new evidence submitted to this Court will change the administrative result, and therefore, remand is

warranted under sentence six of 42 U.S.C. § 405(g). Plaintiff attaches two pieces of evidence for this Court's consideration: (1) Dr. Ray Cutro's Cardiac Medical Source Statement completed in January (January Opinion); and (2) Dr. Cutro's supplemental opinion requested by Plaintiff's lawyer that was completed on April 11, 2023 (April Supplement). As an initial matter, the record and the briefs are not clear as to the date of the January Opinion. Dr. Cutro dated the opinion January 10, 2022 (Tr. 992). Plaintiff refers to this opinion as dated January 10, 2022 (Doc. 26, at 10, 15, 19), as dated January 20, 2022 (Doc. 26, at 11), and as dated January 10, 2023 (Doc. 26, at 17, 21; Doc 26-3, at 1). Plaintiff explains in his Reply that Dr. Cutro must have completed this opinion on January 10, 2023, because the form belongs to Plaintiff's lawyer, and Plaintiff did not hire the lawyer until April 2022 (Doc. 32, at 2). Further, Plaintiff's lawyer informed the Appeals Council on January 5, 2023, of his intent to receive Dr. Cutro's form opinion at Plaintiff's appointment the "next week" (Tr. 324). This aligns with Plaintiff's assertion that the correct January Opinion date is January 10, 2023. The Commissioner assumes for its argument that January 10, 2022, is the date of the opinion since that is the date Dr. Cutro wrote (Doc. 31, at 5 n.1). To add one final bit of confusion, the opinion as incorporated into the transcript has a time stamp in the bottom right corner of each page dated January 10, 2023 (Tr. 988–92). For the purposes of this review and given

the information in the record, this Court will assume that the January Opinion was created in 2023.[2]

Importantly, Dr. Cutro's January Opinion was not before the ALJ but was submitted to the Appeals Council, and the April Supplement was not before the ALJ or the Appeals Council but is now before this Court. Plaintiff argues that both pieces of evidence should be analyzed under sentence six of 42 U.S.C. § 405(g). Specifically, Plaintiff contends that the January Opinion warrants remand under sentence six because it has not been incorporated into the record after consideration from the Appeals Council. This contention is misguided. After Plaintiff requested for the January Opinion to be incorporated into the transcript (Doc. 23), this Court granted such request and noted that it "will consider it in conjunction with the transcript" (Doc. 24). The Social Security Administration then filed the January Opinion as a supplement to the transcript (Doc. 25; Tr. 988–92). The Eleventh Circuit has held that evidence properly considered by the Appeals Council and incorporated into the record can be the basis only for a sentence four remand, not a

---

[2] Even if this Court were to assume that the January Opinion was created in 2022 briefly, it is abundantly clear that it would not survive scrutiny under sentence four or sentence six of 42 U.S.C. § 405(g). As detailed in the Commissioner's unwavering standpoint, if the January Opinion existed in January 2022, then it would have even been available for the ALJ to consider in rendering his March 2022 decision. Certainly, then, there would be no good cause for Plaintiff's failure to submit the evidence at the appropriate administrative level. Additionally, accepting that the January Opinion was created in 2022 significantly curtails the strength of the April Supplement before this Court, as it increases the time in between Dr. Cutro's opinions from 3 months to 15 months. This leap is substantial in considering the good cause for Plaintiff's failure to submit the evidence at the appropriate administrative level. In any event, the information in the record and this Court's interest in furnishing a comprehensive Order favor the interpretation that the January Opinion was created in 2023.

sentence six remand. *See Ingram*, 496 F.3d at 1268–69; *Grimmett v. Soc. Sec. Admin., Comm'r*, No. 22-10652, 2023 WL 2471274, at *1 (11th Cir. Mar. 13, 2023). Thus, the January Opinion fails to meet the criteria for a sentence six remand. Given that, this Court will analyze in turn the January Opinion and the April Supplement under sentence four and sentence six of 42 U.S.C. § 405(g), respectively.

First, with respect to the sentence four analysis, if a claimant presents evidence after the ALJ's decision, the Appeals Council must consider it if it is new, material, and chronologically relevant. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 Fed. Appx. 818, 821 (11th Cir. 2015) (citing 20 C.F.R. § 404.970(b)). The Appeals Council must grant the petition for review if it finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record." *Ingram v. Comm'r Soc. Sec.*, 496 F.3d 1253, 1261 (11th Cir. 2007). The Appeals Council is not required to provide a detailed explanation of a claimant's new evidence when it denies a petition for review. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 783–85 (11th Cir. 2014). In denying review, it is sufficient for the Appeals Council to simply state that it considered the additional evidence but that "the information did not provide a basis for changing the ALJ's decision." *Id.* at 782. This explanation is sufficient when the record does not provide a "basis for doubting the Appeals Council's statement that it considered [the claimant's] additional evidence." *Id.* at 783–84. As such, when the Appeals Council denies review, the federal district court on appeal must consider whether new evidence properly presented to the Appeals Council renders the denial of benefits erroneous. *Ingram*, 496 F.3d at 1262. In other

words, to obtain a remand from a federal district court under sentence four of 42 U.S.C. § 405(g), "[a] claimant must show that, in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons v. Comm'r of Soc. Sec.*, 522 Fed. Appx. 897, 902 (11th Cir. 2013).

Dr. Cutro's January Opinion is a Cardiac Medical Source Statement for the time period December 31, 2018, through the present (Tr. 988). Dr. Cutro noted that he had been treating Plaintiff for seven years (Tr. 988). Dr. Cutro diagnosed Plaintiff as a sudden cardiac arrest survivor with a good prognosis (Tr. 988). The January Opinion stated Plaintiff's signs and symptoms are exercise intolerance and arrythmia (Tr. 988). Dr. Cutro noted that symptoms of angina and syncope had resolved after Plaintiff's stent was installed (Tr. 989). Dr. Cutro also stated that Plaintiff was capable of low stress work but that Plaintiff would need to take unscheduled breaks during a working day to sit quietly (Tr. 989–90). Dr. Cutro opined that Plaintiff could lift up to 20 pounds frequently and 50 pounds rarely, and that Plaintiff could twist, stoop, crouch/squat, climb stairs, and climb ladders occasionally (Tr. 990). Lastly, Dr. Cutro noted that Plaintiff's impairments were likely to produce "good days" and "bad days" and could likely cause Plaintiff to be off task 5% of the workday (Tr. 991). Dr. Cutro failed to answer how many days Plaintiff would likely be absent in a month if working full time or how often and for how long Plaintiff would need to take unscheduled breaks (Tr. 991).

10

The January Opinion was properly submitted to and considered by the Appeals Council (Tr. 4). The Appeals Council determined that the January Opinion did not change the outcome, reasoning that Dr. Cutro's findings were consistent with the restrictions in the RFC (Tr. 4). Specifically, the Appeals Council noted that Dr. Cutro's opinion that Plaintiff's cardiac condition does not prevent him from sitting, standing, or walking for at least 6 hours in an 8-hour day and lifting 20 pounds occasionally and 50 pounds rarely, is consistent with the ALJ's light work RFC (Tr. 4). Further, the Appeals Council concluded that Dr. Cutro's assessment of Plaintiff's postural activity abilities was consistent with the RFC (Tr. 4). Similarly, the Appeals Council stated that Dr. Cutro does not supply a justification for limiting the claimant's exposure to environmental hazards beyond the restrictions in the RFC (Tr. 4). Here, the Appeals Council sufficiently explained its consideration of the new evidence submitted, and Plaintiff has not demonstrated to this Court that "in light of the new evidence submitted to the Appeals Council, the ALJ's decision to deny benefits is not supported by substantial evidence in the record as a whole." *Timmons*, 522 Fed. Appx. at 902. Accordingly, the January Opinion does not warrant remand under sentence four.

Turning to the April Supplement, sentence six "provides the sole means for a district court to remand to the Commissioner to consider new evidence presented for the first time in the district court." *Ingram*, 496 F.3d at 1267. To be entitled to remand to the SSA, the claimant must show that (1) new, non-cumulative evidence exists, (2) the evidence is material such that a reasonable possibility exists that the

new evidence would change the administrative result, and (3) good cause exists for claimant's failure to submit the evidence at the appropriate administrative level. *Caulder v. Bowen*, 791 F.2d 872, 877 (11th Cir. 1986). Accordingly, sentence six encompasses only those instances in which "the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding." *Ingram*, 496 F.3d at 1267 (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). Again, evidence that was presented to the Appeals Council and incorporated into the record cannot be the basis for a sentence six remand. *Id.* at 1269.

New evidence must not be cumulative of other evidence in the record. *See Caulder*, 791 F.2d at 877. Chronologically relevant evidence is evidence that relates to the period on or before the date of the ALJ's hearing decision. *Flowers v. Comm'r of Soc. Sec.*, 441 Fed. Appx. 735, 745 (11th Cir. 2011). Evidence relating to a period after the date of the ALJ's hearing decision is irrelevant as review is limited to "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson v. Apfel*, 179 F.3d 1276, 1279 (11th Cir. 1999). The new evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987).

The April Supplement resulted from Plaintiff's lawyer's request for Dr. Cutro to clarify his January Opinion after the Appeals Council denial in March 2023.

Notably, the April Supplement is divided into two distinct parts: (1) clarifying questions prompted by Plaintiff's lawyer based on Dr. Cutro's unanswered January Opinion portions; and (2) Dr. Cutro's annotations and additional comments to his original January Opinion.[3] In the first portion of the April Supplement, Dr. Cutro opined that Plaintiff should be allowed to take 3 or more breaks for 15 minutes each during the workday (Doc. 26-3, at 1–2). Dr. Cutro reasoned that Plaintiff would have to take these unscheduled breaks "because of his cardiac condition" (Doc. 26-3, at 2). Dr. Cutro further explained that Plaintiff would likely have "good days" and "bad days" because "he has a defibrillator," causing his symptoms to be unpredictable (Doc. 26-3, at 2). Additionally, Dr. Cutro opined that Plaintiff would miss an estimated 4 days per month (Doc. 26-3, at 2). In the second portion of the April Supplement, where Dr. Cutro annotated the original January Opinion, he identified twelve additional symptoms that were not marked on the January Opinion (Doc. 26-3, at 3). Further, Dr. Cutro added "currently [without] symptoms" to his description of Plaintiff's treatment and side effects section (Doc. 26-3, at 4). Under the section detailing how long Plaintiff could sit and stand/walk in an 8-hour day, Dr. Cutro originally only marked "at least 6 hours," but added "less than 2 hours" when writing over the January Opinion (Doc. 26-3, at 5). Finally, Dr. Cutro identified that Plaintiff would be absent from work more than four days per month in the second portion of the April Supplement after previously

---

[3] This Court concludes that Dr. Cutro has written over his original January Opinion because it still has the 1/10/2022 date on the last page and the markings are the same.

leaving it unmarked in the January Opinion, differing from his statement in the first portion of the April Supplement (Doc. 26-3, at 6).

At the outset, this Court finds that there is room for doubt as to whether the April Supplement in its entirety is chronologically relevant. Chronologically relevant evidence is evidence that relates to the period on or before the date of the ALJ's hearing decision. *Flowers*, 441 Fed. Appx. at 745. Evidence relating to a period after the date of the ALJ's hearing decision is irrelevant as review is limited to "the decision of the ALJ as to whether the claimant was entitled to benefits during a specific period of time, which period was necessarily prior to the date of the ALJ's decision." *Wilson*, 179 F.3d at 1279. Here, the ALJ decision was issued on March 30, 2022, so any evidence relating to a period after that date is considered irrelevant. In April 2023, Dr. Cutro was asked to elaborate on his opinion presumably created in January 2023. The January Opinion form stated that Dr. Cutro was to answer the questions "[f]or the time period beginning 12/31/18 and continuing through the present date . . ." (Doc. 26-3, at 3).

This Court notes that this relation-back statement may not fully encompass the relevant time period, as Plaintiff claims, because any opinion concerning Plaintiff's condition between March 30, 2022, and the "present" is chronologically irrelevant (Doc. 32, at 3). Because the issuance date of the ALJ's decision bisects the time frame of the relation-back statement, it is difficult for this Court to fully determine if the April Supplement is chronologically relevant. For example, in the new comments added to the January Opinion, Dr. Cutro noted that Plaintiff was

"currently" without symptoms (Doc. 26-3, at 4). Reasonably, this indicates that Dr. Cutro was commenting on Plaintiff's condition as of April 2023 or the changes in Plaintiff's condition from January 2023 to April 2023. Therefore, it is reasonable for this Court to conclude that the April Supplement cannot be chronologically relevant evidence that warrants remand under sentence six.

But even assuming the April Supplement is chronologically relevant, this Court still finds the April Supplement fails on materiality. New evidence is material, and thus warrants a remand, if "there is a reasonable possibility that the new evidence would change the administrative outcome." *Hyde*, 823 F.2d at 459. There is not a reasonable probability that this new evidence would change the administrative outcome because it is consistent with other evidence in the record noted by the ALJ and the limitations imposed by the RFC determination. *Beavers v. Soc. Sec. Admin., Comm'r*, 601 F. App'x 818, 822 (11th Cir. 2015) (determining that none of the plaintiff's "new evidence directly undermine[d] the ALJ's stated rationale for his decision"). In addition, the April Supplement does not contradict the ALJ's findings that limited Plaintiff's ability to do light work. *Cf. Hyde v. Bowen*, 823 F.2d 456, 459 (11th Cir. 1987) (remanding because new evidence was material when new reports offered objective medical explanation for previously unexplained subjective complaints of pain and inability to work); *Archer v. Comm'r of Soc. Sec.*, 176 F. App'x 80, 82 (11th Cir. 2006).

In the April Supplement, Dr. Cutro opined that Plaintiff should be allowed to take 3 or more breaks for 15 minutes each during the workday "because of his

cardiac condition" (Doc. 26-3, at 1–2). Dr. Cutro further explained that Plaintiff would likely have "good days" and "bad days" because "he has a defibrillator," causing his symptoms to be unpredictable (Doc. 26-3, at 2). Dr. Cutro originally in his January Opinion noted that Plaintiff would be about to sit and stand/walk for 6 hours out of an 8-hour working day, but later changed this opinion to only 2 hours for sitting and standing/walking (Doc. 26-3, at 5). Additionally, Dr. Cutro opined that Plaintiff would miss an estimated 4 days per month, but in annotating his January Opinion, indicated that Plaintiff would miss more than 4 days (Doc. 26-3, at 2).

The evidence in the April Supplement is largely consistent with Plaintiff's hearing testimony and the examinations from the State agency medical consultants, both of which were before the ALJ. At the hearing, Plaintiff testified he could be walking outside or sitting on his living room couch and go into V-Tach for no reason (Tr. 56). Plaintiff testified any type of exertion or stress could bring it on, or it could happen just sitting down and watching TV (Tr. 56). After an episode happens, Plaintiff stated it takes three or four hours to feel semi-normal again (Tr. 57). Plaintiff testified some days were better than others but no day since this had started happening was a good day (Tr. 59). Plaintiff testified he would get lightheadedness or dizziness pretty much every day during some time of the day (Tr. 59). Additionally, Plaintiff testified he could walk up and down the aisles at the grocery store for a little bit with his wife and then he would have to go sit down (Tr. 62). Plaintiff stated that he experienced symptoms of his heart racing sometimes only

once in a day but other times between three to five times in one day (Tr. 66). The State agency medical consultants both noted that Plaintiff could stand and/or walk with normal breaks about 6 hours in an 8-hour workday (Tr. 80). The State agency consultant detailed that Plaintiff's uncontrolled ventricular tachycardia and HTN caused episodes of dizziness followed by palpitations and turning pale (Tr. 81). The State agency consultant stated that Plaintiff would have several reoccurring episodes, which ultimately resulted in a dual chamber AICD placement (Tr. 81). As a result, the State agency consultants included exertional and postural limitations (Tr. 80–81, 92–93).

The ALJ detailed Plaintiff's subjective complaints but ultimately determined that they were not entirely consistent with the medical evidence and other evidence in the record (Tr. 35). In evaluating the medical evidence, the ALJ found that the opinions of the State agency medical consultants were persuasive because of their consistency with the record evidence and with each other (Tr. 39). Specifically, the ALJ noted that both opinions demonstrated Plaintiff's improvement after his cardiac stent was placed (Tr. 39). In addition, the ALJ did evaluate two of Dr. Cutro's opinions that existed at the time of the decision (Tr. 38–39). First, Dr. Cutro opined that Plaintiff "should be afforded disability" because he has lethal sudden death syndrome, precipitated by stress and working (Tr. 38, 679). The ALJ found this statement unpersuasive because it is vague, does not specify any vocationally relevant limitations, and fails to cite any specific medical facts or findings to substantiate his statement (Tr. 38–39). Second, Dr. Cutro indicated that because of

Plaintiff's ventricular fibrillation, he cannot perform heavy exertion (Tr. 39, 948–50). The ALJ found that this statement was generally consistent with the medical evidence but again noted that Dr. Cutro did not state any vocationally relevant limitations or cite any specific medical facts (Tr. 39). Thus, the ALJ determined that the flaws in Dr. Cutro's opinion diminished its persuasiveness (Tr. 39).

Although Dr. Cutro's April Supplement was not before the ALJ, the information contained in the opinion can be fairly said to have been before the ALJ at the time of the decision through Plaintiff's hearing testimony, the State agency medical consultants' opinions, and two of Dr. Cutro's prior opinions. For instance, both the State agency medical consultants and Dr. Cutro opined that Plaintiff could stand and/or walk with normal breaks about 6 hours in an 8-hour workday (Tr. 80; Doc. 26-3, at 5). In addition, the hearing testimony is consistent with Dr. Cutro's opinion on Plaintiff's need for unscheduled breaks. Thus, there is not a reasonable probability that the new evidence would change the administrative result because the medical evidence presented to the ALJ regarding Plaintiff's functional limitations was sufficient and consistent with Dr. Cutro's April Supplement. *Caulder v. Bowen*, 791 F.2d 872, 878 (11th Cir. 1986). Further, the ALJ and the Appeals Council found that Dr. Cutro's opinion to be somewhat unpersuasive for their lack of specific medical facts or findings to substantiate his statements (Tr. 4, 38–39). Here, the April Supplement is peppered with contradictory statements and unsubstantiated opinions. It follows then that the April Supplement would not create a reasonable probability that the administrative result would change for the

same reasons illustrated in the ALJ's and the Appeals Council's decisions. *Cf. Lipscomb v. Comm'r of Soc. Sec.*, 199 F. App'x 903, 907 (11th Cir. 2006) (finding that the plaintiff's new evidence was material because the ALJ had heavily relied on the same doctor's opinion).

For all of the above reasons, the new evidence submitted to the Appeals Council and to this Court do not warrant remand under sentence four or sentence six of 42 U.S.C. § 405(g).

**B.     RFC Analysis**

Plaintiff argues that the ALJ mischaracterized the record and failed to include limitations from Dr. Cutro's opinions. Specifically, Plaintiff argues that the ALJ's determination that the "placement of the stent in January 2020 appears to have generally resolved the claimant's symptoms" is contradicted by Dr. Cutro's opinion that symptoms have persisted despite treatment.

At step four of the sequential evaluation process, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *See* 20 C.F.R. §§ 404.1520(a)(4)(iv), 404.1545, 416.920(a)(4)(iv), 416.945. To determine a claimant's RFC, the ALJ makes an assessment based on all the relevant evidence of record as to what a claimant can do in a work setting despite any physical or mental limitations caused by the claimant's impairments and related symptoms. 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). In rendering the RFC, therefore, the ALJ must consider the medical opinions in conjunction with all the other evidence of record and will consider all the medically determinable impairments, including

19

impairments that are not severe, and the total limiting effects of each. 20 C.F.R. §§ 404.1520(e), 404.1545(a)(2), 404.1545(e), 416.920(e), 416.945(a)(2), 416.945(e); *see Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987) (stating that the "ALJ must consider the applicant's medical condition taken as a whole"). In doing so, the ALJ considers evidence such as the claimant's medical history; medical signs and laboratory findings; medical source statements; daily activities; evidence from attempts to work; lay evidence; recorded observations; the location, duration, frequency, and intensity of the claimant's pain or other symptoms; the type, dosage, effectiveness, and side effects of any medication or other treatment the claimant takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the claimant receives or has received for relief of pain or other symptoms; any measures the claimant uses or has used to relieve pain or symptoms; and any other factors concerning the claimant's functional limitations and restrictions. 20 C.F.R. §§ 404.1529(c)(3)(i)–(vii), 404.1545(a)(3), 416.929(c)(3)(i)–(vii), 416.945(a)(3); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996); SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017).

As indicated, in addition to the objective evidence of record, the ALJ must consider all the claimant's symptoms, including pain, and the extent to which these symptoms can reasonably be accepted as consistent with the objective evidence and other evidence.[4] *See* 20 C.F.R. §§ 404.1529, 416.929; SSR 16-3p, 2017 WL 5180304,

---

[4] The regulations define "objective evidence" to include evidence obtained from the application of medically acceptable clinical diagnostic techniques and laboratory findings. 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2). Additionally, the regulations define "other

at *2. However, a claimant's statement as to pain or other symptoms shall not alone be conclusive evidence of disability. 42 U.S.C. § 423(d)(5)(A). To establish a disability based on testimony of pain and other symptoms, the claimant must show evidence of an underlying medical condition and either (1) objective medical evidence confirming the severity of the alleged symptoms or (2) that the objectively determined medical condition can reasonably be expected to give rise to the alleged symptoms. *Wilson*, 284 F.3d at 1225 (citing *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991)); see 20 C.F.R. §§ 404.1529, 416.929. Consideration of a claimant's symptoms thus involves a two-step process, wherein the ALJ first considers whether an underlying medically determinable physical or mental impairment exists that could reasonably be expected to produce the claimant's symptoms, such as pain. 20 C.F.R. §§ 404.1529(b), 416.929(b); SSR 16-3p, 2017 WL 5180304, at *3-9. If the ALJ determines that an underlying physical or mental impairment could reasonably be expected to produce the claimant's symptoms, the ALJ evaluates the intensity, persistence, and limiting effects of those symptoms to determine the extent to which the symptoms limit the claimant's ability to perform work-related activities. 20 C.F.R. §§ 404.1529(c), 416.929(c); SSR 16-3p, 2017 WL 5180304, at *3–9. When the ALJ discredits the claimant's subjective complaints, the ALJ must articulate explicit and adequate reasons for doing so. *Wilson*, 284 F.3d at 1225 (citation

---

evidence" to include evidence from medical sources, non-medical sources, and statements regarding a claimant's pain or other symptoms, including about treatment the claimant has received. *See* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). Moreover, the regulations define "symptoms" as a claimant's own description of his or her physical or mental impairment. 20 C.F.R. §§ 404.1502(i), 416.902(n).

omitted). A reviewing court will not disturb a clearly articulated finding regarding a claimant's subjective complaints supported by substantial evidence in the record. *Mitchell v. Comm'r, Soc. Sec. Admin.*, 771 F.3d 780, 782 (11th Cir. 2014); *see Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir. 1995) (per curiam) (citation omitted).

Here, the ALJ found that Plaintiff retained a residual functional capacity ("RFC") to perform

> light work as defined in 20 CFR 404.1567(b) except he can frequently climb ramps and stairs, but must never climb ladders, ropes, or scaffolds. He must avoid concentrated exposure to workplace hazards such as unprotected heights and moving machinery. He must also avoid concentrated exposure to atmospheric contaminants such as fumes, odors, dust, gases, and poor ventilation.

(Tr. 34). In making this finding, the ALJ considered, among other things, the medical opinions of Dr. Foster, State agency psychological consultants, Dr. Cutro, State agency medical consultants, and Dr. Kashlan, and the ALJ explained the persuasiveness of each opinion (Tr. 38–39). The ALJ found Dr. Cutro's opinions only somewhat persuasive (Tr. 38–39). The ALJ was not persuaded by Dr. Cutro's statement that Plaintiff "should be afforded disability" because he has lethal sudden death syndrome precipitated by stress and working (Tr. 38). The ALJ reasoned that statement was vague and did not specify any vocationally relevant limitations or restrictions that could be used to formulate the RFC assessment (Tr. 38–39). Further, the ALJ noted that Dr. Cutro did not cite any specific medical facts or findings to substantiate his statement (Tr. 39). The ALJ was somewhat persuaded by Dr. Cutro's opinion that Plaintiff cannot perform heavy exertion due to his ventricular fibrillation (Tr. 39). The ALJ explained that while that statement was

generally consistent with the medical evidence, Dr. Cutro still failed to provide specific medical facts or findings to buttress his opinion (Tr. 39).

When assessing the medical evidence, the ALJ may reject any opinion when the evidence supports a contrary conclusion. *Sryock v. Heckler*, 764 F.2d 834, 835 (11th Cir. 1985) (per curiam) (citation omitted). A reviewing court will not second guess an ALJ's decision regarding the weight to afford a medical opinion, so long as the ALJ articulates a specific justification for the decision. *See Hunter v. Soc. Sec. Admin. Comm'r*, 808 F.3d 818, 823 (11th Cir. 2015). Previously, an ALJ was required to afford the testimony of a treating physician substantial or considerable weight unless "good cause" was shown to the contrary. *Winschel*, 631 F.3d at 1179; *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004) (per curiam) (citation omitted). However, claims filed on or after March 27, 2017, are governed by a new regulation applying a modified standard for the handling of opinions from treating physicians. *See* 20 C.F.R. § 404.1520c; *see also Schink v. Comm'r of Soc Sec.*, 935 F.3d 1245, 1259 n.4 (11th Cir. 2019). The new regulations remove the "controlling weight" requirement when considering the opinions of treating physicians for applications submitted on or after March 27, 2017. *See* 20 C.F.R. § 404.1520c(a); *Yanes v. Comm'r of Soc. Sec.*, No. 20-14233, 2021 WL 2982084, at *5 n.9 (11th Cir. July 15, 2021). Because Plaintiff submitted his application for benefits on January 22, 2020 (Tr. 200), the new regulation applies.

Given record evidence, this Court finds that the ALJ adequately considered and articulated his reasoning for finding Dr. Cutro's opinion somewhat persuasive.

Contrary to Plaintiff's contention, the ALJ here did not mischaracterize Dr. Cutro's opinion or evaluate Dr. Cutro's opinion in such a way to "reveal an inaccurate review of the record and inadequate support in the record." *Flentroy-Tennant v. Astrue*, No. 3:07-CV-101-J-TEM, 2008 WL 876961, at *8 (M.D. Fla. Mar. 27, 2008). Plaintiff is primarily concerned with the ALJ's statement that the "placement of the stent in January 2020 appears to have generally resolved the claimant's symptoms" (Tr. 37). Plaintiff argues that this statement is contradicted by Dr. Cutro's opinion in June 2021 that symptoms have persisted despite treatment (Tr. 948). However, the ALJ cited to several medical records that demonstrate Plaintiff's improvement and symptom mitigation since the placement of the stent (Tr. 36–39, 525, 719, 737, 753, 831, 976). In fact, among the evidence of this improvement was Dr. Cutro's statement in August 2021 that Plaintiff was doing well and had experienced no ICD shocks since the placement of the stent (Tr. 976). Accordingly, Plaintiff's argument that the ALJ mischaracterized Dr. Cutro's opinion is without merit.

Ultimately, the assessment of a claimant's RFC is within the exclusive province of the ALJ, and the ALJ is permitted to reject any opinion when the evidence supports a contrary conclusion as long as the ALJ articulates the reasoning for that decision. *See* 20 C.F.R. § 416.946(c); *Sryock*, 764 F.2d at 835; *Hunter*, 808 F.3d at 823. The ALJ did so here. Thus, the ALJ did not mischaracterize Dr. Cutro's opinion in relation to the record, and the decision is supported by substantial evidence.

**IV.**

Accordingly, after consideration, it is hereby

ORDERED:

1.  The decision of the Commissioner is affirmed.

2.  The Clerk is directed to enter final judgment in favor of the Commissioner and close the case.

DONE AND ORDERED in Tampa, Florida, on this 7th day of August, 2024.

ANTHONY E. PORCELLI
United States Magistrate Judge

cc:  Counsel of Record

25